[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 259 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 260 
Candace Renee Smith ("the mother") and Jay Samuel Smith ("the father") were married in December 1999. They separated in March 2002. The wife filed for a divorce, which the trial court granted after a trial on September 20, 2002, at which only the wife testified. One child was born of the marriage; he was 11 months old at the time of the divorce trial. The wife appeals the divorce judgment, arguing that the trial court erred by awarding the parties joint legal custody of the child, by awarding the father unsupervised visitation, by awarding the father more than "standard" visitation, by placing unwarranted restrictions on the parties during periods of physical custody, by failing to correctly compute the father's child-support *Page 261 
obligation by omitting child-care expenses from the computation, by failing to allocate the debts of the parties, and by failing to divide the parties' personal property. We affirm in part and reverse in part.
The mother testified that the father was not able to keep a job during their short marriage. The mother further testified that she had worked at a day-care facility during the marriage but that she worked as a waitress at the time of trial. She said that her monthly income was $1,040, while child-care costs for the child amounted to $300 per month. The father's monthly income, as reflected on his CS-41 child-support income affidavit, was $1,160.
The mother claimed that the father was abusive to her during the marriage. She said that he would yell and scream at her and that he often pushed and shoved her. She recounted an incident during their separation at which, she says, the father repeatedly punched and kicked her during an argument over pendente lite visitation with the child. She further explained that she was concerned about his violent relationship with his brother, M.J.S., which, she said, involved hitting, chasing each other with baseball bats, and chasing each other with knives. M.J.S., who was 19 years old at the time of the parties' divorce trial, had been hospitalized several times and had been diagnosed with "major depressive disorder with psychotic features, impulse control disorder, and generalized anxiety disorder."
The mother has lived with her parents since the parties' separation. She described their home as a five-bedroom house in which she, her parents, her sister, and the child lived. She explained that the father currently lived with his parents in a two-bedroom trailer with M.J.S., his sister, his sister's husband, and his sister's child. When the child visits with the father overnight, he shares a bed with the father.
The mother testified that the child has asthma and must be on a nebulizer at least twice a day.[1] She explained that, although she smokes, she does not smoke around the child, in her parents' home, or in the car because of the child's asthma. She testified that the father and his family members smoked in the presence of the child before the separation. She also testified that the father called her while he had the child for visitation to say that "he couldn't do nothing with [the child]" and that he was going to take the child to day care. She also said that she had taken care of the child as an infant, that the father had not prepared bottles or changed a diaper, and that the father "sleeps hard" and does not hear the child cry at night. The mother indicated concern that the father may roll over on the child while sharing a bed during overnight visitations and concern that the father would not adequately care for the child.
The judgment awards the parties "joint custody" and then awards the mother "primary physical custody." As we have explained before, the proper terms for custody judgments are contained in Ala. Code 1975, § 30-3-151, which became effective on January 1, 1997. See Harris v. Harris, 775 So.2d 213, 214 (Ala.Civ.App. 1999). Like the divorce judgment in Harris, the divorce judgment in the present case uses the terms commonly used by the bench and bar prior to the adoption of § 30-3-151. Again, we are faced with a judgment that awards the parties "joint custody," which is defined in the statute as *Page 262 
"[j]oint legal custody and joint physical custody," and yet awards one party "primary physical custody," a term undefined in the statute. As we held in Harris, there is but one way to interpret a judgment that awards "joint custody" with an award of "primary physical custody" to one parent — such a judgment must be interpreted as awarding the parents joint legal custody and awarding one parent sole physical custody, the term used by the statute to denote a parent being favored with the right of custody over the other parent, who will receive visitation. §30-3-151(5). We take this opportunity to remind the bench and bar that our legislature has adopted terminology to be used in crafting custody judgments. Use of the terminology used before the enactment of § 30-3-151 only serves to engender confusion.
 "In an action between parents seeking an initial award of custody, the parties stand on equal footing and no presumption inures to either parent. The trial court's overriding consideration is the children's best interests and welfare. The factors that enter into the court's custody determination include the child's age and sex and each parent's ability to provide for the child's educational, material, moral, and social needs. Likewise, it is proper for the court to consider the `characteristics of those seeking custody, including age, character, stability, mental and physical health . . . [and] the interpersonal relationship between each child and each parent.'"
Graham v. Graham, 640 So.2d 963, 964 (Ala.Civ.App. 1994) (quoting Ex parte Devine, 398 So.2d 686, 696-97 (Ala. 1981)) (internal citations omitted). In addition, our review of custody determinations based on ore tenus evidence is quite limited; the trial court's custody judgment is presumed correct and should be reversed only if the judgment is plainly and palpably wrong.Bates v. Bates, 678 So.2d 1160, 1161-62 (Ala.Civ.App. 1996). "`The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.'" Ex parteAnonymous, 803 So.2d 542, 546 (Ala. 2001) (quoting Hall v.Mazzone, 486 So.2d 408, 410 (Ala. 1986)). Thus, the mother's contention that the ore tenus rule does not apply to this case because she presented the only testimony and, therefore, the facts are undisputed, is incorrect. The trial court heard both the mother's testimony on direct examination and on cross-examination, and it had the opportunity to evaluate the mother's demeanor and credibility. We must review the divorce judgment with that in mind.
The mother argues that the trial court erred by awarding the parties "joint custody" because the Custody and Domestic or Family Abuse Act, Ala. Code 1975, § 30-3-130 et seq., prohibits an award of sole, joint legal, or joint physical custody of a child to the perpetrator of domestic or family abuse. See § 30-3-131. She also points out that, under the joint-custody statute, there was no presumption in favor of joint custody because the parties did not both request it. See Ala. Code 1975, § 30-3-152(c). The mother also argues that the evidence does not support a determination that joint legal custody is in the child's best interest.
A trial court is required to consider joint custody in every case. See § 30-3-152(a). It can award a form of joint custody when not requested by both parties. § 30-3-152(b). Under the joint-custody statute, the trial court retains the discretion to determine the appropriate custody arrangement on a case-by-case basis, guided, as always, by the best interest of the child. §30-3-152(a). The joint-custody *Page 263 
statute sets out the factors a trial court must consider in a custody case when determining whether joint custody would be appropriate:
 "(a) The court shall in every case consider joint custody but may award any form of custody which is determined to be in the best interest of the child. In determining whether joint custody is in the best interest of the child, the court shall consider the same factors considered in awarding sole legal and physical custody and all of the following factors:
 "(1) The agreement or lack of agreement of the parents on joint custody.
 "(2) The past and present ability of the parents to cooperate with each other and make decisions jointly.
 "(3) The ability of the parents to encourage the sharing of love, affection, and contact between the child and the other parent.
 "(4) Any history of or potential for child abuse, spouse abuse, or kidnapping.
 "(5) The geographic proximity of the parents to each other as this relates to the practical considerations of joint physical custody."
§ 30-3-152(a).
The mother points out that the joint-custody statute and the Custody and Domestic and Family Abuse Act both reference domestic abuse as a matter to be considered by the trial court. However, the mother's testimony concerning the father's domestic abuse of her during the marriage was called into doubt by the father's attorney on cross-examination. The mother admitted, under cross-examination, that she had bitten the father during the altercation arising out of an argument about pendente lite visitation that occurred while the parties were separated; she explained that she had done so to "get [the father] off of her" during the altercation. The mother denied that the bruising on her arm that was depicted in photographs she admitted into evidence was caused by the father's attempt to hold her arms to prevent her from hitting him, as suggested by the father's attorney; she explained that the bruises were caused by the father's repeated punching. The mother also admitted under cross-examination that she once threw a bottle of nail polish at the father after he released her from being restrained because he was blocking her exit from a room. She said that they had both engaged in pushing and shoving during the marriage, but she portrayed the father as the primary instigator of those physical altercations.
The trial court could have determined that the father was not the perpetrator of domestic or family abuse. The trial court could also have considered the lack of evidence concerning the impact of the alleged domestic or family abuse upon the child.See § 30-3-131 ("Notwithstanding the provisions regarding rebuttable presumption, the judge must also take into account what, if any, impact the domestic violence had on the child."). The trial court could also have determined that granting the mother and the father joint legal custody would be in the child's best interest. Because any or all of these findings would be supported by the meager record, we must affirm the trial court's award of joint legal custody to the parties.
The mother also argues that the trial court's visitation award is an abuse of discretion on several grounds. First, she complains that the trial court failed to award supervised visitation despite the fact that evidence presented to the trial court indicated that M.J.S. had a severe mental disorder that might put the child at risk, that the father would not adequately care for the child, and that the father *Page 264 
might roll over on the child or not hear the child's cries at night because he "sleeps hard." She points out that § 30-3-135(a) permits an award of visitation with a perpetrator of domestic abuse only if adequate provisions for the safety of the child and the victim are made; she argues that the trial court failed to make adequate provisions for the child's safety. The mother also complains that the trial court awarded more than "standard" visitation and that the trial court imposed unnecessarily strict restrictions on the consumption of alcohol by both parties and on overnight nonfamily guests during custodial periods.
A trial court has a wide degree of discretion in visitation matters. See Anonymous v. Anonymous, 620 So.2d 43, 44
(Ala.Civ.App. 1993); Baugh v. Baugh, 567 So.2d 1358
(Ala.Civ.App. 1990). "Visitation cases require an examination of the facts and circumstances of the individual situation which the trial court is able to observe." Watson v. Watson,634 So.2d 589, 590 (Ala.Civ.App. 1994). A trial court's decision on such matters will not be overturned absent a clear and palpable abuse of that discretion. Anonymous v. Anonymous, 620 So.2d at 44.
The trial court's judgment indicates that the paternal grandmother should supervise the father's visitation; however, it also states that the paternal grandmother is not required to be in the constant presence of the father and the child during visitation. Thus, the trial court essentially granted the father unsupervised visitation. However, the judgment does require that the paternal grandmother be present whenever M.J.S. is present when the child is in the home. The trial court's decision not to require that the father's visitation with the child be supervised does not run afoul of § 30-3-135 because the trial court could have either determined that the father had not committed domestic abuse, could have determined that any domestic abuse had not had any impact on the child, or that the child's safety was protected by the occasional presence of the grandmother. The trial court did require the grandmother to be present whenever M.J.S. is in the home. The mother does not specifically explain what further safeguards she would consider adequate to protect the child from any threat posed by M.J.S.; it appears to this court that the trial court's judgment provides sufficient safeguards.
The mother also argues that the trial court ignored her concerns that the father did not adequately care for the child and about the child's sleeping with the father during overnight visitation periods because, she said, the father "sleeps hard" and might roll over onto the child during the night or might not hear him if he cried. However, on cross-examination, the father's attorney asked the mother why she had not mentioned the father's "sleeping hard" as a reason to supervise visitation during her deposition. By doing so, the father's attorney called into question the mother's credibility. The father's attorney also asked the mother why she had decided restrictions on the father's visitations were warranted when initial pendente lite visitation had not required any restrictions or supervision. We cannot say that the trial court was required to limit, restrict, or supervise the father's visitation based on the mother's allegations. The trial court heard the mother's testimony and could have determined that her protests concerning the father's capabilities as a father were exaggerated.
Finally, the mother argues that the trial court's award of visitation is overly generous and that the trial court imposed unnecessary and strict restrictions *Page 265 
on both parents by prohibiting the use of any alcoholic beverages by either parent during custodial periods and by prohibiting overnight nonfamily guests during custodial periods. Because the mother cites no authority indicating that a trial court abused its discretion by awarding a generous amount of visitation to the noncustodial parent, we decline to consider the argument advanced by the mother. Asam v. Devereaux, 686 So.2d 1222, 1224
(Ala.Civ.App. 1996) ("This court will address only those issues properly presented and for which supporting authority has been cited."). However, the mother does cite Smith v. Smith,599 So.2d 1182, 1187 (Ala.Civ.App. 1991), as authority for her argument that the trial court's prohibition on the consumption of alcohol and overnight nonfamily guests is overly restrictive.
In Smith, this court reversed a trial court's restriction on overnight visitation that prohibited the mother from having any male she was not married to or immediately related to be in or stay in her residence during visitation periods. Smith, 599 So.2d at 1187. This court commented that the provision, interpreted as written, would prevent the mother from having any male visitor, be it a male pastor, the husband of a married couple who were social friends of the mother, a male relative who was not immediately related (i.e., an in-law), or a male friend of the children. Id. We reversed the trial court's judgment on this point, ordering that the trial court craft a less restrictive provision that would truly protect the children.Id.
Insofar as the mother complains of the trial court's excessively broad prohibition that "neither parent shall allow any person to whom he or she is not married to or related to by blood to remain overnight in his or her residence or other place where he/she might be staying when the minor child is present," we agree with the mother that the judgment should be reversed on that point and a more properly worded restriction should be inserted in the judgment upon remand. The present wording of the judgment would prohibit the father's brother-in-law (his sister's husband) — he is not married to nor related by blood to the father — from remaining in the trailer overnight during visitation periods. Other overnight guests who would not likely be harmful to the child, like an out-of-town friend of the mother's parents or a female friend of the mother's sister, would also be prohibited under the provision as it is presently worded. We note that even the typical restriction on overnight guests may be particularly difficult to word in this case because both parents live in homes inhabited by several family members and even spouses of those family members.
We do not, however, find that Smith requires a reversal of the provision restricting the use of alcoholic beverages in the presence of the child. The mother argues that no evidence was presented indicating that she had an alcohol-abuse problem; therefore, she argues the restriction is too broad or overly restrictive of her rights. We disagree. The restriction prevents the child from being supervised by a parent whose judgment may be impaired by the consumption of intoxicating beverages, which would be in the child's best interest. Therefore, we affirm the judgment in that respect.
The mother also argues that the trial court improperly computed the child-support award because it failed to include $300 per month in child-care costs in its computation of the award. Rule 32(B)(8), Ala. R. Jud. Admin., states that "[c]hild care costs, incurred on behalf of the children because of employment or job search of either parent, shall be added to the `basic child support obligation.'" The mother testified that child-care costs for the child were $300 per month. Her CS-42 *Page 266 
child-support-guidelines form, which was submitted in support of her Rule 59, Ala. R. Civ. P., motion to alter, amend, or vacate the judgment,[2] includes the $300 figure in the computation of child support. Because the evidence that the child-care costs for the child are $300 per month is undisputed, we must reverse the trial court's award of child support so that it can recompute the amount the father is required to pay by including the $300 figure in the computations as required by Rule 32.
Finally, the mother argues that the trial court erred by failing to address and distribute the debts of the parties and by failing to divide the parties' property. The testimony revealed several debts of the parties, including a debt to the mother's grandfather in the amount of $3,060.92 for a downpayment on the parties' trailer, a $300 utility bill, a $2,742.23 medical bill for treatment of the child, and a $905 medical bill for treatment of the mother after the child's birth. The record also contains a list of property owned by the parties.
The only debt mentioned in the divorce judgment is the utility bill; the judgment requires both parties to be responsible for the bill. When a divorce judgment fails to address who will be responsible for the debts associated with the marriage, "[t]he party liable for his or her debts during the marriage would still be liable for those debts after the dissolution of the marriage and if the parties were jointly liable for debts during the marriage they would still be jointly liable for them after the divorce." Miller v. Miller, 391 So.2d 119, 120 (Ala.Civ.App. 1980). Thus, the judgment's silence on the debts of the parties indicates that they continue to be jointly liable for their joint debts.
The judgment awards each party his or her personal property, specifying nothing but the parties' automobiles. The judgment does not divide the property listed on an exhibit in the record, which appears, besides the personal effects of the parties and their automobiles, to be all the property owned by the parties. However, the mother's Rule 59 motion indicated that the parties had already divided the property; that motion only requested that the trial court reword the provision to read that "each party is awarded all household goods and furnishings in his or her possession." The mother does not support her argument urging reversal of this provision with authority. "This court will address only those issues properly presented and for which supporting authority has been cited." Asam v. Devereaux, 686 So.2d at 1224. Accordingly, we affirm the trial court's division of property.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and PITTMAN, J., concur.
THOMPSON and MURDOCK, JJ., concur in the result.
[1] The mother testified during direct examination that the child required breathing treatments twice per day; on redirect, she testified that he required breathing treatments three times per day.
[2] The record reflects that the father's attorney submitted a proposed divorce judgment to the mother's attorney. Before the mother's attorney responded with suggested changes, the father's attorney submitted the proposed judgment to the trial court. The trial court signed and entered the judgment. When the mother's attorney discovered that the proposed judgment, to which he had suggested several changes, had been entered as the divorce judgment, he filed a Rule 59 motion. Attached to that motion were the mother's CS-42 child-support-guidelines form and other documentary evidence (for example, evidence substantiating the $300 monthly child-care expense) that the mother's attorney had supplied to the father's attorney during their correspondence over the proposed judgment. *Page 267