David W. Daugherty ("the father") appeals from a judgment entered by the Covington Circuit Court in a postdivorce proceeding to the extent that the judgment granted Dawn M. Daugherty ("the mother") permission to relocate with the parties' minor children and declined to modify custody of the children. We affirm.
 Procedural History
On February 7, 2006, the Covington Circuit Court entered a judgment divorcing the mother and the father. That judgment provided, in pertinent part:
 "The physical custody of the parties' minor children is conditionally granted to the Mother. The Court is of the considered opinion that it is in the children's best interest to reside with the Mother so long as she continues to reside in the vicinity of the children's relatives *Page 9 
who live in Covington County and so long as she continues to reside in a location that allows them to continue to attend school where they have been attending. Therefore, the physical custody of the parties' minor children is granted to the Mother so long as she continues to reside where the children can continue to attend Straughn School. In the event the Mother determines that she will not continue her residency in such a location, then the physical custody of the minor children shall be granted to the Father. In the event the Mother chooses to move then she shall give the Father 30 days' notice thereof and upon the Father's sworn petition filed with this Court evidencing the Mother's intention to move, the Father shall be granted the physical custody of the children and he may, at that time, petition for child support and a visitation modification as is necessary."
On January 27, 2007, the mother filed a petition for the father to show cause why he should not be found in contempt for his alleged violation of various other provisions of the divorce judgment; specifically, she alleged that the father had failed to pay certain of the children's medical expenses, had failed to pay the mother an amount of money equal to one-half of the value of his 401(k) retirement account, had failed to return the children to her after exercising his weekend visitation, and had failed to transfer the title of the vehicle awarded to the mother to her.[1] On March 5, 2007, the father filed an answer to the mother's petition and filed a counterclaim for contempt. The father alleged that the mother had failed to timely provide him with the children's medical bills, had failed to pay certain orthodontic expenses, and had refused to allow him to retrieve his personal property. The father further requested that the court modify his child-support obligation, set a location for visitation exchanges, increase his visitation, order that he be given the first option to pick up the children or babysit the children if the mother is unavailable, order the mother to discuss the children's personal issues with him first, and order the mother to pay one-half of a certain tax liability.[2] The mother answered the father's counterclaim on March 13, 2007.
Subsequently, the father received a letter from the mother, dated May 18, 2007, in which she notified him of her intent to relocate to Alabaster. On June 5, 2007, the father filed a verified petition stating that the mother intended to move to Alabaster and that, pursuant to the divorce judgment, he should be awarded physical custody of the children. He also requested that the court set a visitation schedule for the mother and calculate the mother's child-support obligation. On June 8, 2007, the mother filed a response to, and a motion to quash, the father's petition, asserting that the father must satisfy the requirements set forth in Ex parte McLendon,455 So.2d 863 (Ala. 1984), in order to receive custody of the children and that a change in her residence is only one factor for the trial court to consider in making that determination. She further asserted that the provision in the divorce judgment limiting her right to move is unreasonable, and she requested that the court set aside that provision. That same day, the trial court entered an *Page 10 
order awarding the father emergency temporary custody of the children; the cause was also set for a hearing to determine child support and visitation issues. On June 12, 2007, the father responded to the mother's motion, asserting that the mother was barred from challenging the aspect of the divorce judgment limiting her right to relocate because, he said, she did not appeal the divorce judgment.
On June 12, 2007, the mother filed a motion asking the trial court to reconsider its June 8, 2007, emergency temporary order, asserting the same grounds that she had asserted in her June 8, 2007, motion. On June 13, 2007, the mother filed a supplement to her motion, citing cases in which the Alabama Court of Civil Appeals had expressed its disapproval of automatic custodial-reversionary clauses. On June 18, 2007, the mother filed a motion to clarify custody and visitation rights and again requesting that the court reconsider its June 8 order.
After a hearing, the trial court entered an order on July 23, 2007, stating:
 "This Court here again considered its [June 8, 2007,] order and now is of the opinion that it should be, and the same is, hereby withdrawn. However, this Court now considers this cause to be in the status of a motion to modify custody even though the [father's] filing of an affidavit evidencing the Mother's intention to move may not normally be sufficient to be taken as a motion to modify. Because of the Court's prior order instructing the [father] to file just as he filed, the Court will not allow that to prejudice the [father] in seeking to obtain the custody of the children.
 "It is, therefore, Ordered that if the [father] seeks to modify the prior custody order that this Court issued on February 7, 200[6], and thereby seek the physical custody of his children, then he may supplement his affidavit with a proper motion to modify.
 "In the interim, the children shall be returned to the custody of the Mother with visitation again to be allowed to the Father as previously ordered.
 "In the event that the Father seeks to pursue custody of the children, this Court will conduct a trial and apply the McLendon standard in determining what custodial arrangement will be in the best interests of these children,"
On July 26, 2007, the father filed a supplemental motion for temporary custody and a petition for a change of custody. He also requested that the trial court enjoin the mother from withdrawing the children from their current school. On August 1, 2007, the mother filed a motion requesting that the trial court direct law-enforcement officers to assist her in securing the return of the children from the father. She also requested that the father be held in contempt for his refusal to return the children to her as ordered on July 23, 2007. On August 1, 2007, the father responded to the mother's motion, stating that, according to the divorce judgment, he was entitled to summer visitation with the children until August 7, 2007. The father also requested that the trial court hold the mother in contempt.
On August 13, 2007, the trial court entered a judgment that provided, in pertinent part:
 "[P]reviously in August of 2005 the parties had their final hearing in their divorce proceedings and this Court entered a divorce decree in this matter on February 7, 2006, after an ore tenus proceeding. . . . [A]t such time, a primary issue in the divorce proceedings was the Mother's intent to move with the children to Oregon. This Court, at that time, ruled that the legal custody of the parties' minor children be granted to *Page 11 
the parties jointly with physical custody conditionally granted to the Mother. The Court's opinion, at that time, was that it was in the children's best interest to reside with the Mother and to continue to reside in the vicinity of the children's relatives who live in Covington County and to continue to reside in a location that allowed them to continue to attend school where they have been attending. Most important in the Court's opinion was that the children not be moved to the Northwestern part of the United States, which is so far away from their Father and other family members that it would irreparably damage many of those important family relationships. The Court further Ordered that in the event the Mother determined that she would not continue her residency in Covington County, then the physical custody of the minor children would be granted to the Father. However, that provision was based entirely upon the testimony at that hearing which established that a potential move by the Mother at that time would be to the Northwestern United States and not, as is the case now, where the move is relatively nearby.
 "The Mother gave the Father notice that she was going to move with the children to Alabaster, Alabama, on or about May 20, 2007. Upon receiving notice of intent to move, the Father filed a sworn petition seeking custody pursuant to the prior order of this Court on June 5, 2007. At this time, a contempt proceeding was already pending which was filed by the Mother and an answer and counterclaim had been filed by the Father. The Father was granted temporary custody and a hearing was set to hear the Mother's motion for reconsideration.
 "At said hearing, testimony was not taken but counsel for each party made legal arguments; thereafter, this Court set aside its order awarding the Father temporary custody and allowed the Father to supplement his motion concerning custody. The Court further ruled that it would not penalize the Father for following the Court's prior divorce decree order. The Father filed a supplemental motion seeking custody and this Court entered an order setting all pending motions, petitions and counterclaims for a hearing on August 7, 2007. This Court also entered an order on July 26, 2007, requiring that the minor children not be withdrawn from attending the Straughn School System pending a final determination in this matter.
 "That prior to the beginning of the August 7, 2007, final hearing, counsel for both parties made arguments concerning the Alabama Parent-Child Relationship Protection Act. The Mother argued that the Father failed to timely object to her notice of her intention to move. The Father argued that the sworn petition he filed on June 5, 2007, was filed within the required time and met the requirements of the Act, as it caused custody to be taken away from the Mother and temporarily awarded to the Father. The Mother further testified that she was fully aware of the Father's objection upon receipt of the Father's June 5, 2007, filing.
 "The Court finds that the Father did comply with the requirements of the Act, as his filing was done on June 5, 2007, within the required 30 days of receipt of notice and the filing resulted in the awarding of temporary custody to the Father pursuant to the prior divorce decree. This Court further finds that pursuant to Section 30-3-169.1, that if the June 5, 2007, filing was not sufficient, that it would allow the supplemental filing of the Father pursuant to the *Page 12 
ability of this Court to extend or waive the time for commencing such action as any delay was due to the Father following the prior divorce decree order of this Court.
 "The Court heard this matter ore tenus over a two day period and considered the evidence and testimony, including, but not limited to, the matters set forth herein. The evidence presented showed that the Mother was the primary care-giver, had remarried and has now moved to Alabaster, Alabama, which is approximately 2½ hours in driving time from Andalusia, but only approximately 1½ hours from Greenville, Alabama, where the Father is employed. That the Mother is a real estate agent with a goal of working towards obtaining her appraisal license. Currently her income is commission-based and is, at this time, not established. That the Father is a physical therapist who earns approximately $ 80,000.00 per year. That the Father has been employed with the same company for almost 10 years and has worked his way up the management ladder. That the Father is engaged to be married on September 15, 2007, but . . . has been living with his fiance without the benefit of marriage for a number of months and he has done so with the minor children in their home. The evidence also showed that the Father is the primary breadwinner for the children. It is the Court's opinion that both Mother and Father are, with very few qualifications, good parents and care greatly for their children.
 "Evidence was presented that the children would attend the Thompson School System in Shelby County if allowed to relocate. Further evidence was presented that, as opposed to the Straughn School, the Thompson School System has far greater monetary resources and offers a greater variety of extracurricular activities and academic opportunities for the minor children.
 "There was also evidence presented concerning the quality of the living conditions of the children. The Mother submitted pictures and descriptions of the new home that she and her husband have purchased in Alabaster. The Father submitted plans of a new home which he is planning to build, if the custody of the minor children is granted to him.
 "Evidence was presented that both parties are involved in their respective churches. Further testimony showed the minor children also attended church on many occasions with both parents and the paternal grandparents.
 "Therefore, based upon all the evidence presented, including that which is specifically noted in this order as well as all other evidence presented at the trial of this cause, it is, hereby,
 "Ordered, Adjudged and Decreed as follows:
 "(1) The Court finds that the [father] failed to meet the burden established by Ex parte McLendon, 455 So.2d 863 (Ala. 1984) to modify custody. Therefore, the primary physical care, custody and control of the parties' minor children shall remain with the [mother]. THE LEGAL CUSTODY OF THE PARTIES' MINOR CHILDREN SHALL REMAIN JOINTLY WITH EACH PARTY, WITH EACH HAVING EQUAL RIGHT TO DECISION MAKING CONCERNING THE CHILDREN AND TO HAVE EQUAL ACCESS TO ANY AND ALL RECORDS REGARDING SAID CHILDREN, INCLUDING, BUT NOT LIMITED TO, SCHOOL AND MEDICAL RECORDS WITHOUT THE NEED OF ANY FURTHER *Page 13 
ORDER OF THIS COURT TO OBTAIN ANY OF THE SAME.
 "(2) The Court finds that the [mother] established that a relocation of the minor children to Alabaster, Alabama, with the [mother] is in the best interest of the minor children. Therefore, the children shall be allowed to relocate from Andalusia, Alabama, to Alabaster, Alabama, and to be immediately enrolled into the appropriate Shelby County School System in the area in which the [mother] now resides."
(Capitalization in original.)
On August 31, 2007, the father filed his notice of appeal to this court.
 Discussion
On appeal, the father argues that the trial court misapplied the McLendon standard and the burden set forth in the Alabama Parent-Child Relationship Protection Act, Ala. Code 1975, § 30-3-160 et seq. Specifically, he first argues that the divorce judgment awarded custody to "either parent, depending upon the decisions of the [mother]." Further, he argues that the trial court erred by not requiring the mother to satisfy the McLendon standard to obtain court approval to relocate. Finally, the father argues that the trial court erred by requiring the father to satisfy theMcLendon standard in order to prevent the mother's relocation. The father does not challenge the sufficiency of the evidence in this case.
"[W]hen an appellate court is presented with an issue of law, we review the judgment of the trial court as to that issue de novo." Henderson v. Henderson, 978 So.2d 36, 39
(Ala.Civ.App. 2007).
 I.
We first address the father's argument that the divorce judgment awarded custody to "either parent, depending upon the decisions of the [mother]." In Hovater v. Hovater,577 So.2d 461 (Ala.Civ.App. 1990), the mother appealed from a judgment transferring custody of her two children to the father after she had enrolled the parties' older child in a private school in Decatur, based on a provision in the parties' divorce judgment that provided:
 "`It is further Ordered that both parties shall maintain their residence within the Mt. Hope School District so that the children will attend Mt. Hope schools and if either party moves outside of the school district or fails to send the children to Mt. Hope schools physical custody will [be] vested in the other party during the school year and the failing party will have physical custody during the summer vacation months.'"
577 So.2d at 462. This court concluded that the trial court had erred in giving effect to that provision because it had been "premised on a mere speculation of what the best interests of the children may be at a future date." 577 So.2d at 463. Similarly, in the present case the automatic reversionary provision in the divorce judgment — which provided that the custody of the children would be modified if the mother did not "continue[] to reside in a location that allows them to continue to attend school where they have been attending" — was "premised on a mere speculation of what the best interests of the children may be at a future date." Accordingly, that provision was of no effect, and the judgment simply awarded the mother primary physical custody of the children. We, therefore, reject the father's argument on this issue.
 II.
We next address the father's argument that the trial court erred by not requiring the mother to meet the McLendon
standard to obtain court approval to *Page 14 
relocate. Alabama Code 1975, § 30-3-169.4, provides:
 "In proceedings under this article unless there has been a determination that the party objecting to the change of the principal residence of the child has been found to have committed domestic violence or child abuse, there shall be a rebuttable presumption that a change of principal residence of a child is not in the best interest of the child. The party seeking a change of principal residence of a child shall have the initial burden of proof on the issue. If that burden of proof is met, the burden of proof shifts to the non-relocating party."
Accordingly, the mother was required to overcome the presumption that it was not in the best interests of the children to relocate. The trial court's judgment indicates that it determined that the mother had met that burden. There is no statute or caselaw that requires the mother to further meet theMcLendon standard in order to receive permission to relocate. Accordingly, we conclude that the trial court did not err with regard to this issue.
 III.
The father's final argument is that the trial court erred by requiring the father to meet the McLendon standard in order to prevent the mother's relocation. It is apparent from the record that the trial court did not, in fact, require the father to meet the McLendon standard in order to prevent the mother's relocation. Instead, the trial court found that the mother had established that the proposed relocation was "in the best interest of the minor children."
To the extent that the father argues that the trial court erred by applying the McLendon standard to his petition to modify custody, we note that the father failed to present this argument to the trial court. In fact, at trial, the following colloquy took place:
 "[COUNSEL FOR THE FATHER]: `The party seeking a change of principal residence of a child shall have the initial burden of proof on the issue.' So they have to initially prove — they have the burden of proof on that issue. And if they meet that burden, then the burden shifts to my client either having to meet the McLendon Standard —
 "THE COURT: For the move or for a change of custody?
 "[COUNSEL FOR THE FATHER]: For the move. Technically speaking, Your Honor, we could have a hearing under the statute. And then you —
 "THE COURT: Well, it seems to me that even if I find that you're correct, the custody thing would come first because if you won on the custody thing then the other would be a moot point. Would it not? It wouldn't matter whether she moved or not.
 "[COUNSEL FOR THE FATHER]: That would be correct, yes, sir.
 "THE COURT: Do you agree with that or disagree? I know you don't necessarily, but what I just said if what he's saying is true. Okay. Anything else?
 "[COUNSEL FOR THE FATHER]: I guess — I think what would happen is if in the custody if we were not to win then, of course, it would be a problem then can she move because our position would still be that this act applies. And under the act, we don't have to show the McLendon standards in regard to the move. Our position would be is that it's her burden to have to show that she can overcome, this presumption to be able to move." *Page 15 
Further, at the end of the trial, the father's attorney citedEx parte Monroe, 727 So.2d 104 (Ala. 1999), and stated:
 "[T]his is a case in which there was a move contemplated and all of the relatives and what not were here and whatnot. The case went up to the Supreme Court and the Supreme Court of Alabama reversed it — the Court of Appeals, and said that this was enough under the McLendon standard. And it's very similar to this case, so I would present that to you Your Honor."
Based on the foregoing, it appears that the father argued that he did not have to meet the McLendon standard in order to prevent the mother from relocating. It does not appear, however, that the father objected to the application of theMcLendon standard to his petition to modify custody. "[A]n appellate court may not consider an issue that has been raised for the first time on appeal." Wilcoxen v.Wilcoxen, 907 So.2d 447, 450 (Ala.Civ.App. 2005); seealso Wills v. Philbrook, 976 So.2d 1014, 1016
(Ala.Civ.App. 2007) (Bryan, J., concurring in the result) (stating that the father had failed to preserve for appeal his argument that the McLendon standard did not apply to his petition to modify when the only argument that the father made to the trial court was that the McLendon standard did not apply to the determination of whether the mother was allowed to relocate). Accordingly, we conclude that the trial court did not err as to this issue.
 Conclusion
Based on the foregoing, we affirm the trial court's judgment.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
BRYAN, J., concurs in part and concurs in the result, with writing.
BRYAN, Judge, concurring in part and concurring in the result.
I concur with the main opinion as to Parts II and III. I concur in the result with regard to Part I of the main opinion.
[1] At trial, the trial court stated that the father's transfer of the title to the vehicle was sufficient and that that issue had been resolved.
[2] At trial, the father testified that pursuant to an IRS order he must pay the entire amount of the tax liability and, therefore, that issue was no longer an issue to be addressed by the trial court.