THOMAS, Judge.
Chad Wesley Clayton (“the father”) and Gerri Giles Langley (“the mother”) are the parents of twin sons (“the children”), who were born December 1, 2006. The parties were divorced from one another in 2011, and they are each remarried to other people. On October 15, 2013, the mother filed a petition in the Calhoun Circuit Court seeking a modification of the children’s custody. . According to the mother’s petition, the original custody determination awarding- the parties joint custody had been modified by a judgment (“the first modification judgment”) entered on November 20, 2012, in which the circuit court had awarded the father- “primary placement” of the children. The mother asserted that the first modification judgment had included the following language: .
*181 “Therefore, should the [mother] move into the Alexandria’School District, [the mother] can approach the Court with genuine proof of such residence and living arrangements for the Court to determine if week to week placement shall be returned between the parties and a Modification of the Agreement is necessary.”
In her petition the mother asserted that she expected to purchase a property in the Alexandria school district within 10 days. However, instead of an award of joint custody, the mother requested an award of “primary placement” of the children. She further requested an order requiring the father to pay child support, an award of “secondary placement” with the father, and an order specifically addressing which party had primary decision-making authority in specific areas and which party had the right to claim the children as dependents.
On October 28, 2013, the father filed an answer to the mother’s modification petition in which he admitted that he had been awarded “primary placement” of the children in the first modification judgment and that the first modification judgment had included the provision described by the mother regarding week-to-week placement being “returned” if the mother moved into the Alexandria school district. The father requested that the circuit court maintain the award of “primary placement” of the children with him.
Thereafter, the parties filed multiple motions and petitions, some of which were subsequently withdrawn. On January 9', 2014, the father filed a counterclaim in which he requested a modification of the mother’s child-support obligation and a modification of the mother’s visitation schedule. On January 31, 2014, the mother filed a motion seeking an order granting her temporary custody of the children or an order providing injunctive relief because, she asserted, the father intended to disrupt the children’s education by selling his residence during the school year and relocating' the children to Rainbow City after she had relocated to an area within the Alexandria school district. - The father responded that he had listed his residence for sale, that he desired to relocate to Rainbow City, but that he did not intend to relocate during the school year.
On May 19, 2014, the circuit court held a hearing at which it heard ore tenus testimony, and, on June 18, 2014, the circuit court entered its final judgment (“the second modification judgment”). The circuit court awarded the parties joint custody of the children. It expressly noted that an award of “joint custody/shared placement” was in the best interest of the children, and it required the parties to exchange custody of the children on a week-to-week basis. The circuit court expressed a single basis for its decision to alter the custody of the children — the mother had relocated to an area within the Alexandria school district..: The circuit court awarded the mother primary decision-making authority over the areas of academics, religion, and health; the circuit court awarded the father primary decision-making authority over the areas of athletics and cultural and civil affairs. The parents :were required to attend co-parenting counseling, to follow the medical advice of “the psychiatrist and counselors,” and to provide all medicines to the children. Neither party was required to pay child support, and each party was allowed to claim one of the children as a dependent.[1]
*182 On June 18, 2014, the father filed a motion seeking to alter, amend, or vacate the second modification judgment, asserting that it was contrary to the evidence presented. The next day, the mother filed a response to the father’s postjudgment motion. On June 20, 2014, the father filed an amendment to his postjudgment motion, alleging that the circuit court had failed to require the mother to meet the custody-modification standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984). A hearing was held on the father’s postjudgment motion, and, on August 29, 2014, the circuit court entered an order denying the father’s postjudgment motion. The father filed a timely notice of appeal on September 18, 2014, seeking this court’s review of whether the circuit court had erred by failing to require the mother to meet the McLendon standard. “‘[B]e-cause this appeal concerns only questions of law, there is no presumption of correctness in favor of the trial court’s judgment; this court’s review of legal issues is de novo.’ ” F.M. v. B.S., 170 So.3d 663, 667 (Ala.Civ.App.2014) (quoting Morgan Bldg. & Spas, Inc. v. Gillett, 762 So.2d 366, 368 (Ala.Civ.App.2000)).
Neither the divorce judgment nor the first modification judgment are included in the record on appeal; however, there is no dispute that the parties were awarded joint custody of the children in the divorce judgment. Furthermore, the circuit court acknowledged in the second modification judgment that there had been a “previous” judgment awarding joint custody and that it had subsequently modified that award to award the father “primary placement” of the children. Thus, we agree with the father, that the McLendon standard applies.
“When a noncustodial parent petitions for a custody modification, that parent bears the burden of proving the stringent standard set out by our supreme court in Ex parte McLendon, 455 So.2d 863 (Ala.1984). That standard applies, as here, when the parents share joint legal custody but there is a previous judicial determination placing primary physical custody with one parent. Jenkins v. Jenkins, 541 So.2d 19 (Ala.Civ.App.1989). The petitioner must prove initially that a material change in circumstances has occurred since the last decree and that a change in custody would promote the child’s welfare and best interests. Further, the benefits of the proposed change must clearly outweigh the inherently disruptive effect caused by uprooting the child. Jenkins, supra, and McLendon, supra.”
Crane v. Crane, 563 So.2d 615, 617 (Ala.Civ.App.1990).
The second modification’judgment refers to the “best interests” standard, which is an inappropriate standard in this case. The circuit court’s failure to employ the proper standard is reversible error. Clayton v. Clayton, 598 So.2d 929, 931 (Ala.Civ.App.1992). The second modification judgment is therefore reversed, and the cause is remanded for the circuit court to reconsider the evidence presented at the May 19, 2014, hearing under the McLendon standard. Dyson v. Dyson, 689 So.2d 124, 126 (Ala.Civ.App.1996).
*183 REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ„ concur.

. Although the matters have not'been raised as an issue on appeal, we note that the second modification judgment also provided that the children were not to be removed from the *182 Alexandria school system without the mutual consent of the parties and that the second modification judgment included the following improper provision: "[A] presumption shall exist that the parent who remains in the Alexandria School System should become the primary placement for the children should said parent petition the Court for same.” Automatic-reversionary provisions regarding child-custody awards have no legal effect in Alabama. K.R. v. Lauderdale Cnty. Dep’t of Human Res., 133 So.3d 396, 399 n. 2 (Ala.Civ.App.2013) (citing Daugherty v. Daugherty, 993 So.2d 8, 13 (Ala.Civ.App.2008)).