THOMPSON, Presiding Judge.
Ryan Nichole Whitehead (“the mother”) and Brandon Heath Whitehead (“the father”) were divorced by an October 2008 judgment of the Calhoun Circuit Court (“the trial court”). The parties have not specified the exact terms of the custody arrangement set forth in their divorce judgment pertaining to the child born of the marriage. However, on July 29, 2010, the trial court granted the father’s petition to modify the custody provisions of the divorce judgment, awarded the parties “joint custody, care, and control” of the child and specified that the father have “primary placement” and the mother have “secondary placement.”
In April 2014, the father notified the mother by letter that he planned to relocate with the child to Tennessee. On May 7, 2014, the mother filed a petition seeking to modify custody of the child and objecting to the father’s proposed relocation with the child. In her modification petition, the mother also sought an order preventing the father from taking the child out of Alabama pending a hearing on the mother’s petition. The mother filed a separate motion seeking pendente lite custody of the child. On May 8, 2014, the trial court entered an order enjoining the father from relocating with the child pending a hearing on the mother’s petition.
The trial court conducted an ore tenus hearing. At that hearing, it was agreed that the father no longer proposed to relocate to Tennessee and, therefore, that any issue pertaining to that move was moot. On February 26, 2015, the trial court entered a judgment finding that the issue of the father’s proposed relocation was moot and denying the mother’s custody-modification claim. The mother filed a postjudgment motion, and the trial court denied that motion. The mother timely appealed.
The mother first argues that, in denying her petition to modify custody, the trial court applied an incorrect modification standard. In reaching its judgment on the issue of custody, the trial court determined that the mother had failed to meet the modification standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984). The McLendon standard provides that the parent seeking to modify a previous custody award must demonstrate that a material change in circumstances has occurred such that a change of custody would materially promote the child’s best interests and that the benefits of the change would offset the disruptive effect of the change in custody. McLendon, 455 So.2d at 866; Ex parte Cleghorn, 993 So.2d 462, 468-69 (Ala.2008). The mother argues, however, that the “best interests of the child” standard set forth in Ex parte Couch, 521 So.2d 987, 989 (Ala.1988), applies under the facts of this case.
*370 The determination whether the McLendon standard or the “best interests of the child” standard set forth in Couch applies turns on whether there has been a previous custody determination as between the two parents. If no previous custody determination has been made, or if a custody determination has been made that does not favor one parent over the other, such as an award of joint custody pursuant to which the parties share both joint legal custody and joint physical custody, see § 30-3-151(1), Ala.Code 1975, the “best interests of the child” standard applies. New v. McCullar, 955 So.2d 431, 434 (Ala.Civ.App.2006). However, if a previous custody award favors one parent, i.e., by awarding one parent primary, or sole, physical custody, the McLendon standard applies to any modification action. Rehfeld v. Roth, 885 So.2d 791, 794 (Ala.Civ.App.2004) (citing Scholl v. Parsons, 655 So.2d 1060, 1062 (Ala.Civ.App.1995)). Our supreme court has explained:
“There are different standards for a trial court to use in ruling on questions of child custody. If one parent has previously been granted primary physical custody or if one parent has ‘given up’ legal custody, then an existing custody arrangement will be modified only if the modification materially promotes the best interests and welfare of the child. Ex parte McLendon, 455 So.2d 863, 865-66 (Ala.1984). If neither parent has previously been given primary physical custody, then the ‘best interests of the child’ standard applies. Ex parte Couch, 521 So.2d 987, 989 (Ala.1988).”
Ex parte Johnson, 673 So.2d 410, 413 (Ala.1994).
In this case, the most recent, July 29, 2010, custody-modification judgment stated that the parties were to “share the joint custody, care, and control of their minor child.” However, that judgment then specified that the father have the “primary placement” of the child and that the mother have “secondary placement.” The mother was ordered to pay child support to the father and was awarded liberal visitation with the child, i.e., alternating weekends, one weekday each week during the school year, and one-half of the summer break.[1]
*371 The mother contends that because the July 29, 2010, modification judgment specified that the parties share “joint custody” and because she has “placement” of the child for what she contends in her brief is approximately 150 days per year, the custody award awarded the parties joint legal custody and joint physical custody, rather than an award of primary physical custody, or sole custody, to the father. The term “joint custody” is defined in § 30-3-151(1), Ala.Code 1975, as “[j]oint legal and joint physical custody.” However, our appellate courts have recognized that there is confusion in the trial courts’ use of that term, and, therefore, the courts have interpreted the term “joint custody” according to the intent of the trial court in using the term. This court has explained:
“The trial court’s divorce judgment awarded the parties ‘joint custody,’ yet it awarded the father ‘primary physical custody.’ ‘These terms have been-commonly employed by the bench and bar; however, in light of the definitions of the types of custody set out in the joint-custody statute, those older terms are unclear and ... serve only to confuse the issue of custody.’ Harris v. Harris, 775 So.2d 213, 214 (Ala.Civ.App.1999). Using the proper terms set out in the joint-custody statute, § 30-3-151, Ala. Code 1975, the divorce judgment can be construed only one way—that is, it awards the father sole physical custody and the mother and the father joint legal custody. See Harris, 775 So.2d at 214.”
Richardson v. Fotheringham, 950 So.2d 339, 341 (Ala.Civ.App.2006).
This court interpreted a previous judgment that had awarded the parties “ ‘joint custody’ ” but had awarded the father “ ‘primary placement’ ” to be a custody judgment in favor of the father. Clayton v. Langley, 175 So.3d 179 (Ala.Civ.App.2015). Similarly, in Smith v. Smith, 887 So.2d 257, 261-62 (Ala.Civ.App.2003), this court concluded that a custody judgment that awarded the parties “ ‘joint custody,’ ” but specified that the mother was to have “ ‘primary physical custody,’ ” was a judgment that favored the mother.
“[TJhere is but one way to interpret a judgment that awards ‘joint custody’ with an award-of ‘primary physical custody’ to one parent—such a judgment must be interpreted as awarding the parents joint legal custody-and awarding one parent sole physical custody, the term used by [§ 30-3-151] to denote a parent being favored with the right of custody over the other parent, who will receive visitation.”
Smith v. Smith, 887 So.2d at 262. In Smith v. Smith, supra, this court recognized the difference between the terminology employed by the trial court in its judgment and that used in § 30-3-151, and we stated: “We take this opportunity to remind the bench and bar that our legislature has adopted terminology to be used in crafting custody judgments. Use of the terminology used before the enactment of § 30-3-151 only serves to engender confusion.” Id. See also Martin v. Payne, 739 So.2d 510, 510-11 (Ala.Civ.App.1999) (a judgment that awarded “joint custody” but that the evidence showed primary placement was awarded to the mother with the father having liberal visitation was a judgment that favored the mother such that the McLendon standard applied to a modification of the judgment); and Williams v. Williams, 75 So.3d 132, 138-39 (Ala.Civ.App.2011) (stating that “this court has urged trial courts to use the terminology contained in § 30-3-151 when crafting custody judgments” but holding that a judgment awarding the" parties joint custody *372 with one parent having primary physical custody “should be interpreted as awarding the parties joint legal custody of the children and awarding [that one parent] sole physical custody of the children”).
The mother argues that the number of days each month that the child spent with her should be used to determine the nature of the custody award set forth in the July 29, 2010, modification judgment. The mother cites a number of cases in support of that argument. However, in most of those cases, the custody judgments that the parties sought to modify were different from the July 29, 2010, modification judgment that the mother sought to modify in this action. In those other cases, the custody judgments at issue specifically awarded the parties joint physical custody, and the courts examined whether the award was a trae award of joint physical custody such that there was no preference in favor of either parent.[2] In New v. McCullar, supra, the custody judgment at issue provided that “ ‘the parties share joint legal and joint physical custody,’ ” although it specified that the child’s primary residence was with the mother. 955 So.2d at 432. The main opinion concluded that: “To the extent that the divorce judgment is internally inconsistent, we conclude that it in fact created a joint-physical-custody arrangement, as defined by § 30-3-151(3).” 955 So.2d at 436. Therefore, given the facts of that case, the main opinion concluded that the “best interests” standard applied to a modification of that judgment. Id.
In E.F.B. v. L.S.T., 157 So.3d 917 (Ala.Civ.App.2014), although the custody judgment sought to be modified designated the father as the “primary custodian,” that judgment specified that the parties shared “joint physical custody.” This court concluded:
“Like in New, we conclude that the custody arrangement under the modified judgment in the present case, in which the parties received ‘joint physical custody’ and both parties exercised custody over the children for an approximately equal amount of time, amounts to ‘a joint-physical-custody arrangement, as defined by § 30-3-151(3).’ New [v. McCullar], 955 So.2d [431,] 436 [ (Ala.Civ.App.2006) ].”
E.F.B. v. L.S.T., 157 So.3d at 923.
In Hovater v. Hovater, 577 So.2d 461, 464 (Ala.Civ.App.1990), the mother was awarded “ ‘primary physical custody’ ” of the children during the school year and the father was awarded “‘primary physical custody’ ” during the summer. This court concluded that the “best interests” standard applied, stating:
“We conclude that, by the use of the term ‘joint custody’ and by the division of physical custody, the parties and the trial court envisioned a ‘joint legal’ and ‘joint or split physical’ custodial arrangement. Because neither party was awarded exclusive physical custody, the proper standard of review was the ‘best interests and welfare’ of the children as opposed to the more stringent burden established by McLendon.”

Id.

In this case, the July 29, 2010, modification judgment awarded the parties joint custody—not “joint physical custody”— *373 and it awarded the father primary placement. Further, that judgment required that the mother pay child support. Although the award of child support is not dispositive, it tends to support the conclusion that the father was preferred in the custody award, i.e., that the custody award favored the father over the mother.
“When a previous joint custody determination favors one parent, such as when one parent has been granted primary physical custody, and the other parent moves for a modification, the stricter standard set out in McLendon applies.... Even though the parties in this case refer in their briefs to joint custody, the record indicates that the [father] had primary physical custody.”
Ex parte Johnson, 673 So.2d 410, 413-14 (Ala.1994).
Given the facts of this case, the language of the July 29, 2010, modification judgment, and the foregoing authority, we conclude that the July 29, 2010, modification judgment awarded the parties joint legal custody of the child, with primary physical placement, or sole physical custody, see § 30-3-151(5), awarded to .the father.[3] Accordingly, the McLendon standard applied to any action seeking to modify that judgment. Rehfeld v. Roth, supra. The mother has failed to demonstrate that the trial court erred with regard to the standard it applied to her action seeking to modify custody of the child.
The mother next argues that the trial court’s denial of her modification petition was not supported by the evidence. The record indicates that since the entry of the 2010 modification judgment, the father and the child have changed residences multiple times. The father and the child initially lived with the father’s then wife, Jennifer, and they moved to the child’s paternal grandfather’s home when the father and Jennifer separated. The father and the child lived with the paternal grandfather for approximately two weeks before the father moved himself and the child in with his new girlfriend, Karen, whom he later married. It appears that the father, Karen, and the child lived together in at least two different residences. The father and Karen separated in December 2013, and the father and the child again began living' with the paternal grandfather and shared a room in the basement of the paternal grandfather’s home. The father testified that he then began investigating moving to Tennessee to obtain employment and to be closer to friends and some cousins. The father denied that his proposed move to Tennessee in the spring of 2014 was prompted by a new relationship with a woman named Tasha, but other evidence in the record disputes that claim. The father notified the mother on April 8, 2014, that he had rented an apartment in Sparta, Tennessee, and that he intended to move to Tennessee with the child. The father testified that, after the mother filed her petition objecting to the move to Tennessee in April 2014, he and the child moved into a home with his new girlfriend, Stacy, in Alabama. At the time of the hearing in this matter, the father was still living with Stacy and her children, but the two had not married. The record indicates that, since 2010, the child has attended three different schools; however, in spite of the more recent relo-cations of her residence with the father, the child has remained in the same school for almost four years.
*374 The father denied that the frequent changes in his and the child’s residences had had a detrimental effect on the child, but the mother testified that the child’s grades had dropped temporarily after some of those moves. The father admitted that moving so frequently into homes with different women was not appropriate for the child.
The mother testified that she had married and moved in with her husband after the 2010 hearing and that she and her husband had moved twice since that time. The mother and her husband have a young child. The mother testified that she does not work outside the home because her potential earnings would not make paying for day-care and work-related expenses viable.
The mother presented evidence in support of her allegation that the father had an anger problem and was controlling. Karen, the father’s most recent wife, testified that the father had anger issues and often yelled at her and sometimes at the child. However, the father impeached some portions of Karen’s testimony about the details of an alleged act of domestic violence with a tape recording he made of that incident.
The father was questioned about a road-rage incident during which he exited his vehicle and shot a gun into the ah-; the child and other children were in the vehicle during that incident. The father testified that the people in the other vehicle had been the aggressors and that he was not certain whether they were young people acting badly or people who might rob him. Other testimony in the record indicated that the father had been the aggressor in that incident and that the child and the other children in the father’s vehicle during that incident had been very frightened. In another portion of his testimony, the father stated that he believed that it was appropriate to respond in an angry or hostile manner, either physically or verbally, if he was provoked or if another person behaved badly first.
The mother testified that she believed that the child was afraid of the father, and she detailed some instances that she said supported that conclusion. The father testified that the child sometimes lied to him and that he raised his voice or punished her for those lies, but he disputed that the child was afraid of him. He also disputed the mother’s allegation that he discouraged the child from speaking with the mother after the child’s sporting events. Both parties have purchased a telephone, and each had created social-media profiles, for the child’s use because each alleged that the other had “blocked” the child from communicating with the other.
The father presented evidence indicating that the mother purchased expensive gifts for the child and ate at'restaurants frequently but was regularly in arrears on her child-support obligation. The father also disagreed with the mother that the child should be allowed to consume coffee when she'visited the mother and that she should be allowed to have a boyfriend at 12 years of age.
The child testified before the trial court while the parties were not present. ■ In short, the child testified that she was occasionally afraid of the father and that she would prefer to live with her mother and visit the father on the same schedule pursuant to which she had been visiting the mother. No useful purpose would be served by setting forth the full details of the child’s testimony. We note that the trial court found it necessary to remind the parties not to ask the child about any specifics of her testimony or to punish her for anything she had said during her testi *375 mony.[4] Further, in its judgment, the trial court specifically ordered that the parties were restrained from questioning the child about where she preferred to live, from blocking each other’s access to the child through her telephone and social-media accounts, and from speaking derogatorily about each other in front of the child. See Price v. Price, 440 So.2d 1110, 1110 (Ala.Civ.App.1983) (“The paramount consideration for a court in a child custody case is the best interests and welfare of the child.”).
The mother argues that the evidence warranted a change in custody. She cites in support of her argument the father’s numerous moves and relationships, the alleged incident of domestic violence against one of his former wives, and the road-rage incident. In denying the mother’s petition to modify custody of the child, the trial court specifically found that the mother had failed to meet the McLendon standard “in that she failed to present sufficient evidence that the proposed change of custody would offset the disruption caused by the change of custody.” The mother contends that the father’s choices have been disruptive for the child and that a modification of custody would provide the child needed' stability. The mother also points out that the child expressed a desire to live with her and that, although it is not determinative, a child’s custody preference is a factor for the trial court to consider. Glover v. Singleton, 598 So.2d 995, 996 (Ala.Civ.App.1992).
This court shares the mother’s concern about the lack of stability in the father’s residences and relationships and agrees that the evidence in the record also tends to support the conclusion that the father does have an issue with anger. The evidence supports a conclusion that both parties,- but particularly the father, have allowed their dislike for each other to impact the manner in which they parent the child, but it appears that the trial court has attempted to take steps, through enjoining certain behaviors of the parties, to ensure that the child’s best interests are protected. However, the evidence in the record also indicates that the child loves both parents and is generally happy during each parent’s custodial periods. The trial court could have concluded that the child’s preference concerning her primary residence focused on the parties’ differing parenting styles. “On appellate review of custody matters, this court is limited when the evidence was presented ore tenus, and, in such circumstances, a trial court’s determination will not be disturbed ‘absent an abuse of discretion or where it is shown to be plainly and palpably wrong.’ ” Cheek v. Dyess, 1 So.3d 1025, 1029 (Ala.Civ.App.2007) (quoting Alexander v. Alexander, 625 So.2d 433, 434 (Ala.Civ.App.1993)). This court might not have reached the same result as did the trial court given the evidence. However, this court did not have the trial court’s advantage of being able to observe the witnesses as they testified and to’ assess their demeanor and credibility:
‘ “The trial court is in the ... position of discerning the demeanor and other like intangibles which do not transfer so readily in a transcript.” Shepherd v. Shepherd, 531 So.2d 668, 671 (Ala.Civ.App.1988). Stated another way, “the deference given to the trial court by the ore tenus rule is, in part, due to the trial court’s unique position to see and/or *376 hear something that may not be apparent on the face of the written record.” Willing v. Willing, 655 So.2d 1064, 1068 (Ala.Civ.App.1995). See Dobbins v. Dobbins, 602 So.2d 900, 901 (Ala.Civ.App.1992) (“The reason for the ore tenus rule is [well established], i.e., that the trial court had the opportunity to observe the witnesses as they testified, to judge their credibility and demeanor, and to observe what this court cannot perceive from a written record.”).’ ”
Fell v. Fell, 869 So.2d 486, 496 (Ala.Civ.App.2003) (quoting Ex parte Fann, 810 So.2d 631, 638 (Ala.2001)). Given the totality of the evidence, we cannot say that the trial court erred in determining that the mother failed to meet her burden under Ex parte McLendon, supra. Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
PITTMAN, MOORE, and DONALDSON, JJ., concur.
THOMAS, J., dissents, with writing.

. The July 29, 2010, modification judgment provides, in pertinent part:
"2. PLACEMENT. [The father] shall have the primary placement of the parties' minor child.... The [mother] shall have secondary placement of the parties’ minor child as follows:
“i. Weekend Secondary Placement: Commencing on July 30, 2010, and on every other weekend thereafter from the time that school is recessed on Friday until the following Monday morning when school shall commence.
"ii. Weekday Secondary Placement: Every week from the time that school is recessed on Wednesday until the following Thursday afternoon when school shall be recessed.
"iii. Summer Secondary Placement: ... the parties shall alternate placement week to week for the minor child’s summer break from school...,
[[Image here]]
"vi. Precedence of Secondary Placement Schedule: The holiday placement schedule as set forth in the previous Order and summer placement schedule as herein set forth takes precedence over any regularly scheduled weekend and weekday secondary placement period.
"vii, Secondary Placement Schedule Changes: The parties shall be liberal with the set placement schedule as per their careers, vacations, school work, special occasions and holidays permit. The parties shall cooperate fully in regards to such placement and remember that the minor child is to be the primary consideration.
"viii. Mutual Agreement of Change of Secondary Placement Schedule: The schedule of secondary placement may be changed by mutual agreement between the parties.
"ix. Parties’ Agreement for Additional Secondary Placement: The mother may visit with the minor child at other reasonable *371 times and places to which the Parties may agree.”

. In Reuter v. Neese, 586 So.2d 232 (Ala.Civ.App.1991), however, the custody judgment the father sought to modify provided that the parties share “joint custody” of the son, with the son living with the mother during the school year and the father during the summer. This court held that because the custody award did not give primary custody to either parent, the "best interests of the child” standard applied to the modification claim. 586 So.2d at 234.

. We agree with that part of Judge Thomas's dissent in which she points out that the confusion created by the wording of the judgment in this case would be eliminated if attorneys and trial courts used the custody terminology set forth in § 30-3-151, Ala.Code 1975.

. Although the parties were not present when the child testified, the mother’s attorney pointed out that some parts of the child's testimony were made clear to the parties given the nature of some of the questions the attorneys had asked during the ore tenus hearing.