RUSSELL, Judge.
The parties were divorced in January 1979, and custody of their daughter was awarded to the mother. In May 1991 the father filed a petition to modify the divorce decree, requesting that custody of the daughter, then 14 years old, be transferred to him. Following ore tenus proceedings, the trial court denied his petition.
The father appeals, contending that the trial court erred in finding that he did not meet the requirements to change the daughter’s custody. We affirm.
The moving party’s burden in a child custody modification case is set out in Ex parte McLendon, 455 So.2d 863 (Ala.1984). Under McLendon the parent seeking the modification must prove that a change in custody would “materially promote” the child’s best interests and welfare. This is a stringent standard, presupposing the need for stability in a child’s life and requiring proof that the positive good *937 brought about by the custody change will more than offset the inherently disruptive effects of uprooting the child. Id.
The record reveals that the parties’ daughter has been in the custody and control of the mother since the parties’ divorce approximately 12 years ago. Both parties have since remarried. In the months prior to the father’s filing of his petition to modify custody, the daughter had expressed difficulties in getting along with her mother and stepfather and had requested that she be allowed to live with her father. At trial there was testimony that the mother and daughter were experiencing parent-child conflicts concerning the daughter’s friends and boyfriend, her use of the telephone for numerous long-distance calls, and her leaving the house without the mother’s knowledge. A major area of conflict stemmed from an incident where the daughter took the stepfather’s car, without his knowledge or permission, and became involved in an accident that destroyed the car. Soon after this accident, the daughter swallowed a number of pills she took from the mother’s medicine cabinet, necessitating that she be taken to the hospital to have her stomach pumped.
At trial the daughter testified that her mother and stepfather had disciplined her in an excessively severe manner in the wake of these and other events. She indicated that the mother had struck her twice in recent months and that the stepfather had spanked her with a wooden paddle. She maintained that she took the pills after the accident because she preferred to die rather than face her mother. She described the house where she lives with the mother and the stepfather and his three children as “never calm” and beset by “fussing” and fights, recounting one incident when the stepfather struck her mother. She also maintains that “me and my mother, we don’t get along.”
The record indicates that the daughter makes A’s, B’s, and C’s in school and is currently attending professional counsel-ling sessions with the mother. At trial she expressed a clear preference for living with her father. We would note that while an expressed preference of a child to live with a particular parent is a factor to be considered by the trial court, such wishes are not determinative. Miller v. Murphy, 555 So.2d 1078 (Ala.Civ.App.1989).
Although the issue was not raised in any of the pleadings, the daughter also indicated that the stepfather had once touched her “on the bottom” in an inappropriate manner. She further testified that on one occasion, he had invited her and her friends to view a recording of an adult movie from the “Playboy Channel.” The stepfather testified at trial, denying the first of these allegations and disputing the daughter’s characterization of the second incident. It was undisputed that the mother was not present at the time either of the alleged events was said to have taken place. The mother testified that she had never observed the stepfather behaving toward the daughter in an inappropriate or abusive manner.
The mother also testified that she and the daughter have a good relationship until she attempts to discipline the daughter, at which time the daughter becomes angry or disrespectful. She expressed concern regarding the daughter’s excessive phone calls and over certain activities the daughter and her friends had engaged in, but said that when she tried to criticize or discipline the daughter, the daughter would simply laugh at her. She indicated that until the incident with the stepfather’s car, the daughter had never demonstrated any inclination to live with her father, but that the events surrounding the accident had exacerbated a relatively minor conflict between her and the daughter. In recent months, the mother said, the daughter had cited the possibility of a custody change when telling the mother she did not have to pay attention to her. The mother testified that her daughter’s behavior concerned her immensely and that she was quite worried about where her daughter was headed if something was not done to change her attitude and behavior.
When asked why she was fighting the custody change and did not simply allow *938 her daughter to go live with the father, the mother testified as follows:
“I care about her. I mean I love her.... If I didn’t love her I could do that. But I love her enough to go through all of these difficult times to help raise her to be a responsible person and to be able to know that she has to face the consequences of any type situation she comes across.”
As did the mother, the father also expressed his love for the child and his great concern for her welfare. We have examined the record and believe that he, also, would be a fit parent and a suitable party to have custody of the daughter. We note that two witnesses called on the father’s behalf, next-door neighbors of the mother, testified that they had never seen any problems between the mother and the daughter and that, applying their own standards as parents, they believed the mother to be a good parent.
In its order denying the father’s petition for modification, the trial court found as follows:
“The court has carefully considered the testimony from the various witnesses and considered the exhibits as offered by the parties. The court has also carefully observed the demeanor of the witnesses, particularly the minor child whose custody is in dispute. The court realizes that a child of this age often deserves a certain amount of deference to be given her desire as to where she feels she should live. However, after having the opportunity to listen to this witness testify and particularly to observe her demeanor from the witness stand in response to questions proposed to her, the court does not choose to give a great deal of weight to this young lady’s desires. The court is of the opinion that her mother can provide the best atmosphere and environment with which to raise [a] teenage daughter and that it would be in [the daughter’s] best interest that she remain in the custody and control of her mother....”
When ore tenus evidence is presented to a trial court in a child custody proceeding, the courts judgment is presumed correct and will be set aside only for an abuse of discretion or plain error. Batton v. Batton, 496 So.2d 68 (Ala.Civ.App.1986).
Reviewing the record with the attendant presumptions, and recognizing our strict standard for a change of custody, we find no abuse of discretion or error by the trial court. We find that the father failed to prove that removing the daughter’s custody from the mother and placing it with him would materially promote the daughter’s best interests, and we therefore conclude that the father has failed to meet the heavy burden established by McLendon.
We take note of the seriousness of certain allegations made in this case and would caution any implicated parties to modify their conduct to ensure that there is no cause for further such allegations. Despite our decision, we would also wish to assure the daughter that we have considered her testimony, and the sentiments she has expressed therein, with the utmost seriousness.
The judgment of the trial court is affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.