BRYAN, Judge.
Aubrey Dean Williams (“the husband”) appeals from a judgment entered by the Etowah Circuit Court (“the trial court”) that divorced him from Susan Kaye Williams (“the wife”).

Procedural History

The parties married on May 6,1995, and two children, both boys, were born of the parties’ marriage: the older child was born in September 1999, and the younger child was born in February 2003. The parties separated on January 17, 2008, and the wife filed a complaint for a divorce on January 30, 2008. In her complaint, the wife sought, among other things, a divorce on the ground of mental cruelty, sole custody of the children, an award of child support, an award of alimony, an order preventing the husband and his family from making derogatory remarks about her to the children, an equitable division of the property located on Scrougeout Drive in Collinsville (“the Collinsville property”), and one-half of the husband’s retirement benefits. Pursuant to various pendente lite orders entered by the trial court, the wife was awarded pendente lite possession of the parties’ marital residence, which was located on the Collinsville property; the wife was awarded primary custody of the children pendente lite; and the husband was awarded specific pendente lite visitation. The husband subsequently filed an answer to the wife’s complaint for a divorce, and he filed a counterclaim for a divorce seeking, among other things, joint custody of the children, with the husband named as the primary custodial parent, and an award of title to and possession of the Collinsville property, which the husband alleged was not marital property.
The trial court entered a judgment on December 17, 2009, that divorced the parties on the ground of incompatibility. Paragraph six of the judgment was labeled “Minimization of Emotional Trauma on [the] ... Children,” and, pursuant to that part of the judgment, the parties were forbidden from saying or doing anything to influence the children about any issue presented in the divorce action. The parties were awarded joint custody of the children, the wife was designated the primary custodial parent, and the husband was awarded specific periods of visitation. The judgment also ordered, among other things, that the husband pay the wife $903 a month in child support, that the husband pay the wife $750 a month as periodic alimony, that the wife pay 81% and the husband pay 19% of unpaid medical expenses of the children, that the Collinsville property be sold, and that each party receive 50% of the proceeds from the sale of that property. The wife was awarded all the parties’ household goods except the husband’s personal belongings, a 2000 Sierra minivan, and 50% of the husband’s retirement benefits “as determined by the value of the benefits on May 6,1995.” The husband was awarded all right, title, and interest to six different vehicles. Each party was awarded all the financial accounts in his or her name, and each party was ordered to pay all the debts that had been incurred in his or her name. Finally, the husband was ordered to pay $1,500 toward the wife’s attorney’s fees.
On December 18, 2009, the trial court entered a qualified domestic-relations order that assigned to the wife an amount equal to 50% of the husband’s retirement benefits that had accrued under the husband’s pension plan as of May 6, 1995. The husband filed a postjudgment motion pursuant to Rule 59, Ala. R. Civ. P., and Rule 60, Ala. R. Civ. P. The husband challenged, among other things, the award of custody, the order requiring him to pay *135 a share of the children’s unpaid medical expenses, the award of child support, the disposition of the marital residence, the awards of personal property, the award to the wife of a portion of his retirement benefits that had accrued before the parties’ marriage, and the award of periodic alimony to the wife. The husband also requested that the trial court consider additional testimony at the hearing on his postjudgment motion.
On February 17, 2010, following the filing of the wife’s motion to correct a clerical error, the trial court amended the divorce judgment to require the husband to pay 81%, and to require the wife to pay 19%, of the children’s unpaid medical expenses. On February 28, 2010, the husband filed an amended postjudgment motion challenging the constitutionality of paragraph six of the divorce judgment, asserting that it interfered with his parental rights, that it interfered with his right to free speech, that it was vague and ambiguous, and that it was so broad that it included protected speech. Following a hearing on the husband’s postjudgment motions, where the court took additional testimony from the parties’ older child, the trial court denied all pending post-judgment relief requested by the husband, and the husband timely appealed.

Issues

The husband presents several issues for this court to review on appeal: (1) the award of sole physical custody of the children to the wife; (2) the award of child support and the allocation of unpaid medical expenses; (3) the division of property and the award of alimony to the wife; and (4) the constitutionality of paragraph six of the divorce judgment.

Facts

At the ore tenus hearing that was conducted on October 26, 2009, June Nichols, a psychologist who had counseled the children, testified that when she first met the parties’ older child he was “a very upset young man.” She described him as worried and stressed about everything, and she stated that the source of the older child’s stress was his relationship with the husband and “this going back and forth.” Nichols stated that the children loved both parents but that the older child felt tension in his relationship with the husband and felt that the husband placed responsibility for the younger child on him. According to Nichols, those issues needed to be resolved, and, because the children had been primarily under the care of the wife during the pendency of the divorce action, she saw no reason to change their custodial arrangement.
The wife testified that she had filed for a divorce from the husband because he had mentally abused her, because he was controlling, and because she was afraid of him. The wife testified that she had been the primary caretaker of the children and that the husband had told her, before the older child was born, that he would not care for their children until the children turned three or four years old because they would not remember who cared for them before that point. The wife also stated that the husband did not help the children with their homework because he did not think that the children should have homework until they were in the fourth grade. She testified, however, that she had helped the children with their homework and that the older child had made all As and Bs and that the younger child had made straight As. The wife maintained that the husband had talked to the children about the divorce, that the husband and his family had said that the wife was crazy in front of the children, and that the husband had allowed the older child to read his counterclaim for a divorce.
*136 The husband alleged that he had eared for the children most of the time when they were growing up and that he played sports with the children as often as possible. The husband admitted that he had taken the children to his attorney’s office because he was concerned about them, and, although he denied letting the children read the divorce pleadings, he stated that he did discuss the divorce with the children. The husband alleged that the older child had gained approximately 55 pounds since the wife had filed for a divorce, and the husband attributed the older child’s weight gain to the older child’s propensity to spend several hours a day playing video games instead of getting more exercise. The husband also alleged that his father (“the paternal grandfather”) had been admitted to the hospital shortly after the wife had filed for a divorce and that the wife had refused to allow the children to visit the paternal grandfather in the hospital when it became certain that the paternal grandfather would die. After the wife was awarded pendente lite possession of the parties’ marital residence, the husband lived with his mother from February 2008 through November 2008, and then he moved into a camper on the Collinsville property. The husband stated that he spent his visitation time with the children at his mother’s home.
The parties maintained separate financial accounts throughout their marriage. The evidence indicated that the parties had two accounts with A.G. Edwards, a brokerage firm, one account in the husband’s name and one account in the wife’s name, that were created as college-fund accounts for the children. The husband also had separate financial accounts with three other financial institutions — Merrill Lynch, Morgan Keegan, and First Southern Bank — that were not used to benefit the marriage, which totaled approximately $16,500. The husband had a savings account and a checking account with a combined total of approximately $12,700. The husband agreed that the wife should be awarded her 2000 Sierra minivan, but he asked to be awarded approximately six vehicles that were in his name, asserting that the wife did not contribute any funds to purchase the vehicles and that she did not use the vehicles.
The wife was self-employed and worked from the home. The wife testified, and her 2008 federal income-tax return revealed, that the wife earned approximately $24,000 in 2008 but that her gross income in 2008, after proper self-employment deductions were made, was $12,185, or approximately $1,015 a month. The wife agreed with a statement made by her attorney that she did not incur any childcare expenses, and she testified that her mother was able to retrieve the children from school if she was unable to do so.[1] At the time of the hearing, the husband worked for Goodyear Tire, and he testified that he grossed approximately $1,000 each week, or approximately $52,000 a year.
The husband first worked at Goodyear Tire from 1984 through 1989, and he began earning retirement benefits during that time. He was laid off in 1989, but he began working at Goodyear Tire again in 1994. The wife agreed that the husband’s Goodyear Tire retirement account was in existence before she and the husband married. The husband testified that he had approximately $20,000 in his Goodyear Tire retirement account at the time the parties married in May 1995 and that, at the time the wife filed her complaint for a divorce, the balance in the account was *137 approximately $92,000. According to the husband, he earned at least 3% interest on his retirement account, and he estimated that he had earned $8,400 in interest on the retirement funds that he had accumulated before the parties married.
The Collinsville property consisted of the marital residence and approximately 65 acres of land, and the appraised value of the Collinsville property was $235,000. It was undisputed that the parties had lived in the marital residence since they married in 1995. According to the wife, when the parties married, the husband told her that the Collinsville property was “ours.” Only the husband’s name was on the deed to the Collinsville property, but the wife stated that only the husband’s name was on everything they owned, including her vehicle.
The Collinsville property was once owned by the husband’s mother and father, but the husband began living in the residence located on the Collinsville property in 1989. The husband’s mother and father gave him the deed to the Collinsville property in 1991, but the husband did not have the deed recorded in his name until 1997. The husband opined that the Col-linsville property was worth $180,000. The husband testified that the marital residence was on approximately one acre of land and that he and his father had operated a cattle business on the remaining acreage in the Collinsville property. The wife admitted that she did not participate in raising cattle with the husband and that no funds from the husband’s cattle business were used for the benefit of the marriage. The husband stated that the marital residence and one-acre of land should be separated from the remaining acreage because the wife did not participate in raising cattle and she rarely used any part of the 65 acres other than the area where the marital residence was located.
The wife owned a home before the parties married, and she netted approximately $19,000 from the sale of that residence while the parties were married. According to the wife, she used the sale proceeds to pay bills and to purchase furniture for the marital residence. At the time the parties married, the wife owed a debt to the Internal Revenue Service and to a credit-card company. However, according to the wife, the parties had agreed that the wife could keep the income she made from her job as spending money. The wife testified that she had inherited a home from her father, who died in March 2008, and, at the time of the trial, the house was apparently listed for sale for $58,000.
According to the wife, there was a safe in the marital residence that contained at least $10,000; however, she stated that she did not have access to that safe. The husband testified that he was not sure how much money was in the safe at the marital residence. The husband submitted an exhibit, without objection, that he described as a list of his personal property that he was requesting the court award to him. It included approximately 44 items or sets of items, some of which, according to the exhibit entered into evidence, allegedly were owned by the husband before the marriage or were gifts to the husband from his father.
The trial court agreed to take additional testimony at the hearing on the husband’s postjudgment motions, and, at that hearing, the older child testified that he wanted to spend most of his time with the husband.

Standard of Review

“ ‘When ore tenus evidence is presented, a presumption of correctness exists as to the trial court’s findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without *138 supporting evidence, manifestly unjust, or against the great weight of the evidence. J & M Bail Bonding Co. v. Hayes, 748 So.2d 198 (Ala.1999); Gaston v. Ames, 514 So.2d 877 (Ala.1987). When the trial court in a nonjury case enters a judgment without making specific findings of fact, the appellate court “will assume that the trial judge made those findings necessary to support the judgment.” Transamerica Commercial Fin. Corp. v. AmSouth Bank, 608 So.2d 375, 378 (Ala.1992). Moreover, “[ujnder the ore tenus rule, the trial court’s judgment and all implicit findings necessary to support it carry a presumption of correctness.” Transamerica, 608 So.2d at 378. However, when the trial court improperly applies the law to [the] facts, no presumption of correctness exists as to the trial court’s judgment. Allstate Ins. Co. v. Skelton, 675 So.2d 377 (Ala.1996); Marvin’s, Inc. v. Robertson, 608 So.2d 391 (Ala.1992); Gaston, 514 So.2d at 878; Smith v. Style Advertising, Inc., 470 So.2d 1194 (Ala.1985); League v. McDonald, 355 So.2d 695 (Ala.1978). “Questions of law are not subject to the ore tenus standard of review.” Reed v. Board of Trustees for Alabama State Univ., 778 So.2d 791, 793 n. 2 (Ala.2000). A trial court’s conclusions on legal issues carry no presumption of correctness on appeal. Ex parte Cash, 624 So.2d 576, 577 (Ala.1993). This court reviews the application of law to facts de novo. Allstate, 675 So.2d at 379 (“[W]here the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court’s judgment carries no presumption of correctness.”).’ ”
Farmers Ins. Co. v. Price-Williams Assocs., Inc., 873 So.2d 252, 254-55 (Ala.Civ.App.2003) (quoting City of Prattville v. Post, 831 So.2d 622, 627-28 (Ala.Civ.App.2002)).

Discussion

I. Custody Detennination
On appeal, the husband first argues that the trial court erred by awarding the wife sole physical custody of the children because such an award was contrary to the law and the evidence of the case and because it was not in the best interest of the children. The trial court awarded the parties joint custody of the children, and it designated the wife as the “primary custodial parent.” In his brief on appeal, the husband correctly notes that the term “primary custodial parent” is not defined in the Alabama joint-custody statute, § 30-3-151, Ala.Code 1975,[2] and that this *139 court has urged trial courts to use the terminology contained in § 30-3-151 when crafting custody judgments. See Smith v. Smith, 887 So.2d 257, 262 (Ala.Civ.App.2003). However, the husband directs this court to no authority to support his argument that the custody award should be reversed based on the trial court’s failure to use the appropriate child-custody terminology in the divorce judgment. See Rule 28(a)(10), Ala. R.App. P.; and Ex parte Showers, 812 So.2d 277, 281 (Ala.2001). Moreover, as the husband apparently recognizes, the trial court’s judgment should be interpreted as awarding the parties joint legal custody of the children and awarding the wife sole physical custody of the children.[3] Cf. Combs v. Combs, 4 So.3d 1141, 1145, 1151 (Ala.Civ.App.2008) (when the parties in a divorce action were awarded joint legal custody and the husband was designated as the “primary custodian,” this court interpreted that award to be an award of primary physical custody, or sole physical custody, to the husband).
“When the trial court makes an initial custody determination, neither party is entitled to a presumption in his or her favor, and the ‘best interest of the child’ standard will generally apply.” Steed v. Steed, 877 So.2d 602, 604 (Ala.Civ.App.2003) (citing Nye v. Nye, 785 So.2d 1147 (Ala.Civ.App.2000)). In Ex parte Devine, 398 So.2d 686, 696-97 (Ala.1981), the Alabama Supreme Court set forth a list of factors a trial court may consider in making an initial award of custody based on the best interest of the children, including
“[t]he sex and age of the children ...; ... the characteristics and needs of each child, including their emotional, social, moral, material and educational needs; the respective home environments offered by the parties; the characteristics of those seeking custody, including age, character, stability, mental and physical health; the capacity and interest of each parent to provide for the emotional, social, moral, material and educational needs of the children; the interpersonal relationship between each child and each parent; the interpersonal relationship between the children; the effect on the child of disrupting or continuing an existing custodial status; the preference of each child, if the child is of sufficient age and maturity; the report and recommendation of any expert witnesses or other independent investigator; available alternatives; and any other relevant matter the evidence may disclose.”
The husband argues that factors such as the wife’s abandonment of the children, the wife’s cruelty toward the children, the wife’s neglect of the children, and the older child’s custodial preference weighed in favor of awarding him sole physical custody of the children. Initially, we note that there is no evidence in the record to support a finding that the wife abandoned the children, and we reject the husband’s argument that the wife abandoned him sim *140 ply by filing for a divorce. Regarding the alleged cruelty of the wife, the husband cites the testimony presented at the ore tenus hearing indicating that the wife did not allow the children to see the paternal grandfather in the hospital before he died. The husband also alleges that, due to the neglect of the wife, the older child gained approximately 55 pounds during the pen-dency of the divorce action. Although such evidence could have supported an award of sole physical custody to the husband, the trial court heard other evidence that supported a finding that the best interest of the children would be served by awarding the wife sole physical custody of the children. Nichols, the children’s counselor who testified as an expert, stated that she saw no reason to remove custody of the children from the wife in light of the fact that she had been their primary caretaker. Nichols also testified that the older child had unresolved interpersonal issues with the husband that, she indicated, caused the older child a great deal of stress. Finally, other evidence indicated that the wife had provided for the educational needs of the children by helping them with their homework and that the husband had not considered homework something the children should be required to complete until they were in the fourth grade.
Furthermore, although “an expressed preference of a child to live with a particular parent is a factor to be considered by the trial court, such wishes are not determinative.” Bassett v. Brown, 598 So.2d 936, 937 (Ala.Civ.App.1992); see also Ladden v. Ladden, 49 So.3d 702, 718 (Ala.Civ.App.2010). The older child was only 10 years old at the time he testified that he preferred to live with the husband; the trial court could have considered the older child’s age, and Nichols’s testimony that the older child was under a significant amount of stress, in determining that the older child’s expressed preference was not due to be given considerable weight in making the initial custody determination. Accordingly, we conclude that the trial court’s judgment awarding the wife sole physical custody of the children is supported by the evidence and is due to be affirmed.
II. Child Support and Unpaid Medical Expenses
Next, the husband argues that the award of child support is contrary to the law and the evidence presented insofar as it does not conform to the child-support guidelines set forth as an appendix to Rule 32, Ala. R. Jud. Admin. In 2008, before the trial in this matter, both parties filed a CS-41 Child-Support-Obligation Income Statement/Affidavit form (“CS-41 form”), and those forms appear in the record. According to the wife’s January 2008 CS-41 form, she earned approximately $2,000 a month and paid $347 a month for childcare expenses. According to the husband’s November 2008 CS-41 form, he earned approximately $4,325 a month and paid $78 a month in health-insurance expenses. However, at the hearing in October 2009, the parties offered testimony that conflicted with the information contained in their CS-41 forms. The wife testified that her self-employment income totaled approximately $1,015 a month, and the trial court could have concluded that she did not incur any child-care expenses. The husband testified that, at the time of the hearing, he was earning approximately $52,000 a year, or approximately $4,333 a month. Using this information to complete a CS-42 Child-Support Guidelines form, and using the husband’s health-insurance expense from his 2008 CS-41 *141 form,[4] we reach the same child-support obligation as the trial court did, $908 a month.[5] The husband does not argue on appeal that the wife improperly calculated her gross monthly income pursuant to Rule 32(B)(8), Ala. R Jud. Admin, (self-employment income). Because the husband’s argument on appeal is based solely on his contention that the child-support award is unsupported by the evidence in the record and that it did not comply with the child-support guidelines appended to Rule 32, and because there is evidence to support the child-support determination, the trial court’s child-support determination is due to be affirmed.
The husband also argues that the trial court’s allocation of the children’s unpaid medical expenses is “inconsistent with the parties’ pro rata share of expenses.”[6] In the divorce judgment, as amended, the wife was ordered to pay 19% of the children’s unpaid medical expenses and the husband was required to pay 81% of the children’s unpaid medical expenses. The wife’s gross monthly income is equal to 19% of the parties’ combined gross monthly income, and the husband’s gross monthly income is equal to 81% of the parties’ combined gross monthly income. Accordingly, the allocation of the children’s unpaid medical expenses is identical to the parties’ percentage share of their combined gross monthly income. The husband raises no other argument to support reversal of the allocation of the children’s unpaid medical expenses; accordingly, that aspect of the judgment is due to be affirmed.
III. Division of Property and Award of Alimony
On appeal, the husband challenges the award of a portion of his retirement benefits to the wife, the awards of personal property, the award of alimony to the wife, and the disposition of the Collinsville property. Because we conclude that the award of a portion of the husband’s retirement benefits to the wife must be reversed and, therefore, that the division of property and the award of alimony must be reconsidered, we will consider that aspect of the property division first.
A. Retirement Benefits
The husband argues that the trial court erred in awarding the wife a portion of his retirement benefits for three reasons: (1) because the wife failed to prove that his retirement benefits were vested as required by § 30-2-51(b), Ala.Code 1975; (2) because the wife failed to prove the present value of his retirement benefits as required by § 30 — 2—51(b); and (3) because the judgment awarded the wife a portion of his retirement benefits that had accu *142 mulated before the parties married, in violation of § 30-2-51 (b)(2). The division of retirement benefits in a marital estate is governed by § 30-2-51(b), Ala.Code 1975, which states:
“The judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed, provided that the following conditions are met:
“(1) The parties have been married for a period of 10 years during which the retirement was being accumulated.
“(2) The court shall not include in the estate the value of any retirement benefits acquired prior to the marriage including any interest or appreciation of the benefits.
“(3) The total amount of the retirement benefits payable to the non-covered spouse shall not exceed 50 percent of the retirement benefits that may be considered by the court.”
Initially, we note that our review of the record reveals that the husband did not argue before the trial court that the wife failed to present evidence indicating that the husband’s retirement benefits were vested; accordingly, this court may not consider that argument. See State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 821 (Ala.2005) (citing Crutcher v. Wendy’s of North Alabama, Inc., 857 So.2d 82, 97 (Ala.2003)) (an appellate court “cannot consider arguments advanced for the purpose of reversing the judgment of a trial court when those arguments were never presented to the trial court for consideration or were raised for the first time on appeal”).
However, the husband did properly preserve for review the argument that the wife failed to present evidence of the present value of his retirement benefits. It was undisputed that the husband’s retirement benefits with Goodyear Tire began accumulating before the parties married. The husband testified that he had accumulated approximately $20,000 in retirement benefits at the time the parties married on May 6, 1995, and that the minimum interest rate applicable to his retirement account was 3%. According to the husband’s calculations, he had earned approximately $8,400 in interest on the retirement funds that existed before the parties married. The husband also testified that there was approximately $92,000 in his retirement account at the time the wife filed for a divorce in January 2008. Because we must assume that the husband’s retirement benefits were vested, the trial court was presented evidence from which it could have calculated the present value of the husband’s future retirement benefits that accumulated during the parties’ marriage. Accordingly, we find no merit in the husband’s argument that the wife failed to present evidence of the present value of his retirement benefits.
Finally, the husband argues that the trial court erred by awarding the wife the value of 50% of his retirement benefits “as determined by the value of the benefits on May 6, 1995,” which is the date the parties were married. In order to implement this provision of the divorce judgment, the trial court entered a qualified domestic-relations order that assigned to the wife “an amount equal to ... 50% of the [hus-bandj’s entire retirement benefit which had accrued under the 1950 Pension Plan as of May 6, 1995.” The husband, citing § 30 — 2—51 (b) (2), argues that the divorce judgment awards the wife the portion of the husband’s retirement benefits that should have been excluded, i.e., the retirement benefits that accumulated before the *143 parties’ marriage on May 6, 1995. We agree with the husband that the language used in the divorce judgment, as well as the language in the qualified domestic-relations order, awarded the wife 50% of the amount of the husband’s retirement benefits that had accrued up to the date of the parties’ marriage, in violation of § 30-2 — 51(b)(2). Accordingly, that part of the divorce judgment that awarded the wife a portion of the husband’s retirement benefits that had accrued before their marriage on May 6, 1995, is due to be reversed.
Because the husband has appealed the award of alimony to the wife and other aspects of the division of property, we remand the cause to the trial court with instructions to reconsider its award of alimony and its division of property[7] in light of the impact of the change in the award of retirement benefits to the wife.[8] See Tompkins v. Tompkins, 843 So.2d 759, 762 (Ala.Civ.App.2002) (reversing an award of retirement benefits that exceeded the statutory limit and remanding the case for the trial court to reconsider its property division); and Dunn v. Dunn, 891 So.2d 891, 895 (Ala.Civ.App.2004).
B. Division of the Collinsville Property
Although we have remanded the case with instructions to the trial court to reconsider its property division, including the award of alimony to the wife, we will address the husband’s argument on appeal that the Collinsville property was not subject to division because it was part of his separate estate. Section 30-2-51 (a), Ala. Code 1975, allows a trial court to divide “property acquired by one party before the marriage if ‘the property ... has been used regularly for the common benefit of the parties during the marriage.’ ” Sumerlin v. Sumerlin, 964 So.2d 47, 49 (Ala.Civ.App.2007) (emphasis omitted) (affirming a judgment awarding to the wife the marital residence that was purchased by the husband before the parties’ marriage and that was used as his place of business).
The evidence presented indicated that the Collinsville property was given to the husband by his parents before the parties married and that the parties lived on the Collinsville property for the entire length of their marriage. Although the evidence indicated that the majority of the land that composed the Collinsville property was used for a cattle business that was operated by the husband and his father, there was only one deed to all the Collins-ville property. The husband argues that because the wife only regularly used a small part of the Collinsville property — the marital residence and the surrounding one-acre of land — during their marriage, she should be entitled to only a portion of that part of the Collinsville property.
In response to the husband’s argument, the wife, citing Rule 28(a)(10), Ala. R. Civ. P., argues that this court should *144 disregard the husband’s argument because the husband failed to cite any authority to support his argument that the trial court erred by considering the Collinsville property as a whole and by concluding that it was marital property subject to division. See Latham v. Department of Corr., 927 So.2d 815, 822 (Ala.2005) (citing the well established rule that an appellate court will disregard a party’s argument on appeal for failure to comply with Rule 28(a)(10)). The trial court evidently concluded that the Collinsville property should be considered as a whole and that, because it was undisputed that part of the Collins-ville property regularly had been used for the common benefit of the parties during the marriage, the Collinsville property was marital property. “Whether property is marital or separate property is a ‘matter for the trier of fact [to decide] after reviewing all the evidence in each case.’ ” Wolf v. Wolf 666 So.2d 17, 18 (Ala.Civ.App.1995) (quoting Shirley v. Shirley, 600 So.2d 284, 287 (Ala.Civ.App.1992)). The husband has provided this court no basis to support a reversal of the trial court’s determination that the Collinsville property should be considered as a whole. Accordingly, we affirm the trial court’s determination that the Collinsville property was marital property subject to division.[9]
IV. Constitutionality of Paragraph Six
Finally, the husband argues that paragraph six of the divorce judgment, specifically the first sentence of that paragraph, is ambiguous; that it violates his First Amendment constitutional right to free speech; that it violates his constitutional right to a relationship with his children; and that it is overly broad. Paragraph six of the divorce judgment states, in pertinent part:
“6. Minimization of Emotional Trauma on Child/Children: Neither party shall do or say anything to [the] ... children of the parties, or in [the] ... children[’](s) presence and hearing[,] to influence [the] ... children about the other party or about any issue presented in this action.”
We cannot agree with the husband that paragraph six of the divorce judgment is ambiguous. Keeping the purpose of paragraph six in mind, i.e., the minimization of emotional trauma on the children, a plain reading of paragraph six reveals the trial court’s intention to limit the parties’ ability to do or say anything to influence the children about the issues presented in the divorce action in a way that would harm the children by causing emotional trauma.
In support of his argument that paragraph six violates his constitutional right to free speech and his constitutional right to a relationship with the children, the husband cites the main opinion in Jackson v. Jackson, 999 So.2d 488, 494 (Ala.Civ.App.2007) (per Moore, J., with Pittman and Thomas, JJ., concurring in the result), which recognized a parent’s “constitutional right to a relationship with [his or] her children,” citing Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), and held that “[t]he state should not intrude on [a parent’s] constitutional rights any more than necessary to protect a compelling state interest,” citing M.L.B. v. S.L.J., 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996). The husband does not *145 contend that the state does not have a compelling interest in protecting the children of this state from harm. See Ex parte 62 So.3d 531, 536 (Ala.Civ.App.2010) (citing E.H.G. v. E.R.G., 73 So.3d 614 (Ala.Civ.App.2010)) (“[T]his court has recognized that the state has a compelling interest in protecting its children from harm.”). He argues that paragraph six of the divorce judgment precludes him from saying anything to the children about any issue presented in the divorce action and that, therefore, paragraph six of the divorce judgment is so broad that it interferes with his constitutional rights in a manner that is more than necessary to protect the state’s compelling interest in keeping the children from harm.
However, a plain reading of paragraph six does not, as the husband argues, forbid the husband from saying anything whatsoever to the children about any issue presented in the divorce action. Paragraph six precludes the husband and the wife from saying anything to “influence the children about ... any issue presented in this action,” for the stated purpose of minimizing emotional trauma on the children and thus protecting the children from harm. The husband does not argue that his constitutional rights to free speech and a relationship with the children would require that he be permitted to influence the children about issues related to the divorce action in a manner that would cause the children emotional trauma. Therefore, because paragraph six does not, as the husband suggests, forbid all communication between the husband and the children regarding any issue related to the divorce, we need not decide whether a divorce judgment that did so would violate a parent’s constitutional rights to free speech and a relationship with his or her children. Accordingly, based on the husband’s argument on appeal, we find no error in paragraph six of the divorce judgment.

Conclusion

The award of retirement benefits to the wife is reversed and the cause is remanded for the trial court to reconsider its division of property and the award of alimony to the wife. All other aspects of the divorce judgment are affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
MOORE, J., concurs in the rationale in part and concurs in the result, with writing.

. We note however, that an exhibit entered into evidence by the wife setting forth her monthly expenses included $100 a month for day-care expenses.

. Section 30-3-151 provides:
“For the purposes of this article [Title 30, Chapter 3, Article 7, § 30-3-150 through § 30-3-157, entitled ‘Joint Custody’] the following words shall have the following meanings:
"(1) Joint custody. Joint legal custody and joint physical custody.
"(2) Joint legal custody. Both parents have equal rights and responsibilities for major decisions concerning the child, including, but not limited to, the education of the child, health care, and religious training. The court may designate one parent to have sole power to make certain decisions while both parents retain equal rights and responsibilities for other decisions.
"(3) Joint physical custody. Physical custody is shared by the parents in a way that assures the child frequent and substantial contact with each parent. Joint physical custody does not necessarily mean physical custody of equal durations of time.
“(4) Sole legal custody. One parent has sole rights and responsibilities to make major decisions concerning the child, including, but not limited to, the education of the child, health care, and religious training.
*139 "(5) Sole physical custody. One parent has sole physical custody and the other parent has rights of visitation except as otherwise provided by the court.”

. Although the husband, in his initial brief on appeal, argues that the trial court erred by awarding the wife sole physical custody of the children, in his reply brief the husband argues that the divorce judgment should not be interpreted as awarding the wife sole physical custody of the children. Instead, he argues in his reply brief that the divorce judgment should be interpreted as awarding the parties joint custody — -i.e., joint legal custody and joint physical custody — of the children. Although this court cannot consider arguments raised for the first time in an appellant’s reply brief, see Byrd v. Lamar, 846 So.2d 334, 341 (Ala.2002), we disagree that the divorce judgment established a joint-custody arrangement.

. According to the husband’s 2008 CS-41 form, the husband was employed at Goodyear Tire, which was where he was employed at the time of trial.

. We note that, despite the fact that the wife filed her complaint for a divorce in January 2008, before Rule 32 was amended effective January 1, 2009, the trial court evidently used the child-support guidelines as amended effective January 1, 2009, in making a determination of the husband's child-support obligation. However, we will not reverse the trial court’s child-support determination based on grounds that the improper child-support guidelines were utilized because the husband did not present this argument to the trial court. See Andrews v. Merritt Oil Co., Inc., 612 So.2d 409, 410 (Ala. 1992) (an appellate court may consider arguments made on appeal only if those arguments were first considered by the trial court).

.The husband’s argument is taken from a quote in his initial brief on appeal; we construe the husband’s argument as a challenge to the percentage allocation of unpaid medical expenses because it is inconsistent with the parties’ percentage share of their child-support obligation.

. As part of his appeal of the division of the personal property in the divorce judgment, the husband argues that the divorce judgment is vague, ambiguous, and nonfinal because it is unclear from the judgment what personal property was awarded to the husband. The part of the divorce judgment that divided personal property states as follows: "[The wife] is awarded all of the household furniture, furnishings, appliances, etc., in the marital [residence] except [the husband]'s personal belongings.” This court does not expect a trial court to enter a judgment that specifically awards every individual item of personal property owned by the parties, and we disagree that the divorce judgment is nonfinal for failing to do so. However, for the benefit of the parties involved in divorce proceedings, specific judgments are always preferred.

. On remand, while reconsidering its division of property, the trial court may, in its discretion and subject to the requirements of § 30-2-51(b), award the wife a portion of the husband's retirement benefits.

. The husband, citing § 30-2-51(a), also argues that the trial court failed to consider the wife’s separate estate when it awarded her one-half of the proceeds from the sale of the Collinsville property. This argument is based on his assertion that the Collinsville property is his separate estate. Because we have affirmed the trial court’s determination that the Collinsville property as a whole was not part of his separate estate, we reject the husband’s arguments made in his initial brief on appeal that are premised upon that assertion.